1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

G. STEVEN BURRILL,

Defendant.

Case No. 17-cr-00491-RS-1

**ORDER GRANTING EMERGENCY MOTION FOR RELEASE**

## I. INTRODUCTION

Defendant G. Steven Burrill is currently in the custody of the Bureau of Prisons ("BOP") and incarcerated at the federal correctional institution ("FCI") in Duluth, Minnesota. Burrill is 75 years old and suffers from asthma, high blood pressure, high cholesterol, diabetes, diverticulosis, blood clots, hearing loss, glaucoma, cataracts, and lower back nerve pain. He moves for immediate release from FCI Duluth, in light of his heightened risk of becoming severely ill from COVID-19, pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is granted.

## II. BACKGROUND

On December 7, 2017, Burrill pled guilty to investment advisor fraud, 15 U.S.C. §§ 80b-6, 80b-17, and filing a false tax return, 26 U.S.C. § 7206(1). He was sentenced to 30 months in prison, followed by three years of supervised release. It was recommended he serve his prison sentence at FCI Duluth, so he could be near his family in Wisconsin. Burrill self-surrendered on

1    March 4, 2019. His projected release date is April 2021.[1]

2         On March 11, 2020, Burrill emailed the Associate Warden at FCI Duluth, copied the

3    Warden, and "formally request[ed] that [he] be transferred to home confinement ASAP" in light of

4    the COVID-19 pandemic. Burrill predicted the pandemic "will go [through] this camp like

5    wildfire." "For us older folks (I am 75)," he wrote, "it is a sentence to death." "Unfortunately we

6    do not have any diagnostics in this camp….[B]y the time we figure out that we have been infected

7    in the camp, it will be far too late to do anything to stop it." He then requested the Warden invoke

8    their authority under the Fair Sentencing Act to move him to home confinement.

9         On April 2, 2020, Burrill's attorneys sent the Warden an email supplementing his March

10   11 email. "We understand that Mr. Burrill previously submitted a request seeking compassionate

11   release," they wrote. They then "supplement[ed] " the prior email by providing context about

12   Burrill's health, lack of criminal record, and plans upon release. They explicitly stated they did not

13   expect their email to "affect the 30-day period under 18 U.S.C. § 3582(c)(1)(A), which began to

14   run upon the receipt of Mr. Burrill's motion for compassionate release." The Warden responded to

15   Burrill's attorneys the following day, confirming they would add the supplement to Burrill's "RIS

16   [i.e. Reduction in Sentence] request already in progress." That same day, Burrill filed the present

17   motion with the Court, seeking compassionate release.

18   ### III.  LEGAL STANDARD

19        Under section 3582, as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194

20   (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after

21   the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring

22   a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

23   warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon such a

24   motion, a court may modify a defendant's sentence "after considering the factors set forth in §

25

26   [1] Burrill's brief lists his projected release date as November 2020. This calculation presumably
     considers the prospect of good time credit. There is nothing in the record that indicates he would
27   not receive such credit.

28                                                          Order Granting Emergency Motion
                                                            Case No. 17-cr-00491-RS-1

2

3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons." U.S. Sentencing Guidelines, § 1B1.13(1)(A) & cmt. 1.[2] One of these reasons is whether the defendant is "suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. 1(A)(ii). The Commission also requires the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).

## IV. DISCUSSION

### A. Waiver

The government first argues the terms of Burrill's plea agreement prevent him from seeking a sentence reduction under 18 U.S.C. § 3582. A waiver of rights under section 3582 is enforceable if "(1) the language of the waiver encompasses the relief sought, and (2) the waiver is knowingly and voluntarily made." *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009). When Burrill made his plea agreement, in December 2017, he waived his right to seek relief under section 3582. At the time, the statute permitted sentence reductions exclusively upon a motion by the BOP. The First Step Act, passed more than a year later, for the first time allowed section 3582 sentence reductions upon a *defendant's* motion. The waiver in Burrill's plea agreement thus cannot encompass the relief he presently seeks, as he could not have "knowingly waived rights that were not in existence, or even contemplated, at the time of his plea." *United States v. Rodriguez*, No. 17-cr-00021, 2019 WL 6311388, at *6 n.4 (N.D. Cal. Nov. 25, 2019) ("Waiver is

---

[2] Courts are split on whether section 1B1.13 continues to control, as it has not been updated since the passage of the First Step Act. *Compare United States v. Cantu,* No. 05-cr-00458, 2019 WL 2498923, at *3-4 (S.D. Tex. June 17, 2019), *with United States v. Ebbers,* 02-cr-01144, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). However, even courts which have found the provision to be outdated have held it continues to provide "helpful guidance." *United States v. Beck,* No. 13-cr-00186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019).

1  the relinquishment of a known right."). Burrill therefore did not waive his right to bring his

2  present motion in his plea agreement.

3  **B. Exhaustion**

4       The government next argues Burrill has failed to exhaust administrative remedies as

5  required by 18 U.S.C. § 3582(c)(1)(A). Burrill emailed the Associate Warden and Warden on

6  March 11, explicitly seeking release to home confinement "ASAP" in light of the COVID-19

7  pandemic, pursuant to the Warden's authority under the First Step Act. The government now says

8  the prison "did not understand [Burrill's] email to be a submitted request for a sentence reduction

9  within the meaning of 18 U.S.C. § 3582 and the implementing regulation" at the time it was sent.

10  That argument is less than compelling, as it is offered as unattributed hearsay in the declaration of

11  an Assistant United States Attorney, not any prison official. Furthermore, the Warden's April 3

12  response acknowledging Burrill's attorneys' email would be added "to his RIS [i.e. Reduction in

13  Sentence] request *already in progress*" directly contradicts the declaration (emphasis added).

14  Thus, Burrill effectively requested relief under section 3582 in his March 11 email. As 30 days

15  have expired, and BOP has not acted upon the petition, this Court has jurisdiction to reduce

16  Burrill's sentence.[3]

17  **C. Extraordinary and Compelling Reasons**

18       In light of the heightened medical risk the COVID-19 pandemic poses to Burrill in

19

20

---

[3] Burrill argued in his Reply brief this Court had jurisdiction to reduce his sentence even before 30 days had expired, because of a futility exception to the section 3582 exhaustion requirement. Several courts have indeed held that requiring a defendant to exhaust administrative remedies "would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate." *United States v. Zukerman*, No. 16-cr-00194, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020). *See also, e.g.*, *United States v. Colvin*, No.19-cr-00179, 2020 WL 1613493 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17-cr-00513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020). However, as other courts—including the only court in the Ninth Circuit to consider the issue so far—have concluded, the futility exception applies only to judicially created exhaustion requirements, as opposed to the statutory variety at issue here. *See United States v. Holden*, No. 13-cr-00444, 2020 WL 1673440, at *10 (D. Or. Apr. 6, 2020); *United States v. Woodson*, No. 18-cr-00845, 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020). *See also Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("*[J]udge-made* exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions." (emphasis added)).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   particular, there are extraordinary and compelling reasons to order his immediate release from FCI

2   Duluth. "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this

3   nation." *United States v. Hernandez*, No. 18-cr-00834, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2,

4   2020). "It presents a clear and present danger to free society for reasons that need no elaboration."

5   *Id.* The Centers for Disease Control and Prevention ("CDC") have warned COVID-19 poses a

6   heightened risk to those incarcerated in jails and prisons. *Interim Guidance on Mgmt. of*

7   *Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for

8   Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-

9   ncov/downloads/guidance-correctional-detention.pdf. The CDC's dire predictions have borne out

10  in correctional institutions around the country. *See, e.g.*, *A Jail in Chicago Is Now the Largest-*

11  *Known Source of U.S. Infections*, N.Y. Times (Apr. 8, 2020),

12  https://www.nytimes.com/2020/04/08/us/coronavirus-live-updates.html#link-7634e187; Megan

13  Flynn, *Top Doctor at Rikers Island Calls the Jail a 'Public Health Disaster Unfolding Before Our*

14  *Eyes'*, Wash. Post (Mar. 31, 2020), https://www.washingtonpost.com/nation/2020/03/31/rikers-

15  island-coronavirus-spread/. Federal correctional institutions, which had reported zero COVID-19

16  cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its

17  facilities, are now reporting numerous virus-related deaths. Ryan Lucas, *'They're All Really*

18  *Afraid': Coronavirus Spreads In Federal Prisons*, NPR (Apr. 7, 2020),

19  https://www.npr.org/2020/04/07/828319691/they-re-all-really-afraid-coronavirus-spreads-in-

20  federal-prisons.

21          The particular risk COVID-19 poses to older individuals and those who suffer from

22  Burrill's medical conditions warrants his release. The CDC has warned individuals over 65 years

23  old, and those who suffer from asthma, high blood pressure, and diabetes, are at higher risk of

24  becoming severely ill and dying from COVID-19. *People Who Are at Higher Risk for Severe*

25  *Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-

26  ncov/need-extra-precautions/people-at-higher-risk.html. These conditions are, of course, not ones

27  from which an individual is expected to "recover"; any incarcerated person with one of these

28                                                              ORDER GRANTING EMERGENCY MOTION
                                                                CASE NO. 17-cr-00491-RS-1

United States District Court
Northern District of California

1  underlying conditions is unlikely to be able "to provide self-care within the environment of a

2  correctional facility" to avoid contracting COVID-19. U.S. Sentencing Guidelines § 1B1.13 cmt.

3  1(A)(ii). *See also* Katelyn Polantz, *Inmates Sue for Soap and Paper Towels as Coronavirus*

4  *Spreads in Jails*, CNN Int'l (Mar. 31, 2020), https://www.cnn.com/2020/03/31/politics/inmates-

5  sue-coronavirus-jails/index.html. Prison conditions mean incarcerated individuals, as well as

6  society as a whole, are safer the more defendants are released. *See* The Times Editorial Board,

7  *Coronavirus Makes Jails and Prisons Potential Death Traps. That Puts Us All in Danger*, L.A.

8  Times (Mar. 18, 2020), https://www.latimes.com/opinion/story/2020-03-18/coronavirus-prisons-

9  releases. This is especially true for defendants like Burrill who are at high risk of contracting

10  severe cases, and even dying, of COVID-19. In other words, Burrill has effectively demonstrated a

11  nexus between his medical conditions and the ongoing pandemic which supports a reduction under

12  section 3582.

13      The section 3553(a) sentencing factors also support Burrill's release. In particular, one

14  such factor is "the need for the sentence imposed…to provide the defendant with…medical

15  care…in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). While it may have been true

16  when Burrill was sentenced that the BOP could provide him adequate medical care, circumstances

17  have changed. Burrill is unlikely to be able to get the medical care he needs in the midst of an

18  ongoing pandemic. *See* Lisa Freeland et al, *We'll See Many More Covid-19 Deaths in Prisons if*

19  *Barr and Congress Don't Act Now*, Wash. Post (Apr. 6, 2020),

20  https://www.washingtonpost.com/opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-

21  at-risk-offenders/ (discussing "wholly inadequate medical care" in federal prisons). Furthermore,

22  sections 3553 and 3582 both require consideration of public safety. 18 U.S.C. §§ 3553(a)(2)(C),

23  3582(c)(1)(A)(ii). At the time of his sentencing, Burrill was adjudged not to pose any danger to

24  the community. *See Amended Probation Presentence Report*, ECF No. 238, at 35. That is even

25  truer now given he no longer acts as an investment advisor—the very position which gave rise to

26  his crime.

27      For these reasons, numerous courts around the country have granted compassionate release

28

under section 3582 to defendants in recent weeks. *See, e.g.*, *United States v. Trent*, 16-cr-00178, ECF No. 106 (N.D. Cal. Apr. 9, 2020); *United States v. Colvin*, No.19-cr-00179, 2020 WL 1613493 (D. Conn. Apr. 2, 2020); *United States v. Hernandez*, No. 18-cr-00834, 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020); *United States v. Resnick*, No. 14-cr-00810, 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020); *United States v. Edwards*, Defendant., No. 17-cr-00003, 2020 WL 1650406 (W.D. Va. Apr. 2, 2020); *United States v. Perez*, No. 17-cr-00513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020); *United States v. Rodriguez*, No. 03-cr-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020); *United States v. Gonzales*, No. 18-cr-00232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020); *United States v. Muniz*, No. 09-cr-00199, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16-cr-00078, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020). The same is warranted here.

## V.  CONCLUSION

For the reasons set forth above, the motion for immediate release is granted, to be effective at the close of business today. Burrill's sentence of imprisonment is modified to time served. However, the remaining portion of the original term of imprisonment (as calculated by the BOP), shall be served as supervised release with the special condition that Burrill shall be subject to home confinement, followed by the three-year term of supervised release imposed in the original sentence. Upon his release and during his term of home confinement, Burrill will satisfy the 14-day self-quarantine requirement. The BOP is directed to release Burrill forthwith. The government shall serve a copy of this order on the Warden at FCI Duluth immediately.

**IT IS SO ORDERED**.

Dated: April 10, 2020

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California